UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN RE: ) | |
| ONA COLETTE ANNE HULL ) | Case No.  18-32076 |
| Debtor. ) | Chapter 7 |
| ) | |
| ONA COLETTE ANNE HULL ) | A.P. No.  18-3046 |
| Plaintiff. ) | |
| vs. ) | |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| EDUCATION, ET AL. ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION**

This adversary proceeding comes before the Court on the Joint Motion for Summary Judgment filed by Defendants, the United States of America, on behalf of its agency the Department of Education (the "Department"); Education Credit Management Corporation ("ECMC"); and Kentucky Higher Education Assistance Authority ("KHEAA") (collectively, the "Defendants"), and the Motion for Summary Judgment filed by Plaintiff, Ona Colette Anne Hull ("Plaintiff"). This case concerns the dischargeability of certain student loan debts pursuant to 11 U.S.C. § 523(a)(8). This matter is now ripe for adjudication. The Court has considered the Motions, and the supporting documents submitted by each party, as well as the entire record presented to the Court in this matter. For the following reasons, the Court will grant the Defendants' Joint Motion for Summary Judgment and deny the Plaintiff's Motion for Summary Judgment.

**I. JURISDICTION**

The court has subject matter jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference issued by the U.S. District Court for the Western District of Kentucky. This

matter is a core proceeding and the court has authority to enter final orders. 28 U.S.C. § 157(b)(2)(I). Pursuant to 28 U.S.C. §§ 1408 and 1409, venue in this court is proper.

## II. FACTUAL BACKGROUND

### 1. Plaintiff's Education History and Student Loans

Plaintiff attended three institutions of higher education. First, Plaintiff attended Shawnee State University in Portsmouth, Ohio for her undergraduate education between 1993 and 1998. She graduated with distinction from Shawnee State with an Associate's Degree in Small Business Administration. Second, Plaintiff attended Sullivan University between 2002 and 2005, where she graduated magna cum laude in 2006 with a Bachelor's Degree in Pre-Law. Finally, in 2010, Plaintiff attended online classes at Strayer University for one year to learn more about "data warehousing and database management."

To pay for her higher education, the Plaintiff incurred several student loans. Plaintiff obtained one consolidation loan currently held by ECMC. The loan in the amount of $55,995 was disbursed on August 22, 2006 and was a consolidation of five (5) prior loans which were disbursed between 1993 and 1997 while Plaintiff attended Shawnee State University. Since the disbursement of the loan, Plaintiff made one payment on May 22, 2007 and seventeen payments from September 2011 until January 2013. Since January 2013, the Plaintiff has not made a single payment on the consolidation loan now held by ECMC. The balance due on the consolidation loan was $104,321.03 as of November 2018.

Plaintiff also obtained loans currently held by the KHEAA to attend Sullivan University. Plaintiff received both a subsidized and unsubsidized loan in two disbursements each. The first disbursement of the subsidized loan in the amount of $2,834 occurred on September 22, 2006. The

second disbursement of this loan in the amount of $2,833 occurred on December 15, 2006. The first disbursement of the unsubsidized loan in the amount of $3,334 occurred on September 22, 2006. The second disbursement of this loan in the amount of $3,333 occurred on December 15, 2006. A third disbursement for each loan was scheduled for January 11, 2007, but was cancelled prior to that date. Both of these loans accrue interest at the rate of 6.80%.

These loans were initially held by US Bank NA ELT EFS Finance Company LLC, the Servicer, until the Plaintiff filed this adversary proceeding. On October 25, 2018, US Bank filed a claim with KHEAA on its guaranty of the loans due to the Plaintiff's filing of this adversary proceeding. KHEAA paid the bankruptcy claim on October 26, 2018, thus becoming the current holder of the loans. Between June 18, 2007, the date on which these loans entered repayment, and October 25, 2018, Plaintiff made payments totaling $1,690 on these two loans, while having obtained 32 months of deferment and 86 months of forbearance of her repayment obligation. As of October 26, 2018, the total balance owed on KHEAA's two loans was $22,163.07, which includes $22,156.38 in unpaid principal (including capitalized interest of $10,172.06) and $16.50 in accrued interest.

Plaintiff also obtained loans to attend Strayer University. Plaintiff received the two loan disbursements on September 30, 2010. The first loan disbursement was $817.00 plus interest. The second loan disbursement was $11,683 plus interest. As of January 2021, the Plaintiff has paid $2,557.20 on the two loans. The total balance owed on the two loans as of January 27, 2021 was $17,296.64, which includes $11,599.24 in unpaid principal and $5,697.40 in accrued interest.

In summary, to finance her higher education at three separate institutions, the Plaintiff took out several loans, currently held by the Defendants. These loans total approximately $144,000 in

student loan debt, plus interest and penalties thereon.

**2.      Plaintiff's Employment and Income History**

Plaintiff has worked at a variety of jobs in recent years. Since October 2018, Plaintiff has been employed with Humana Global Business as a Consumer Services Operations Professional in the Claims Oversight Department. In her depositions, Plaintiff testified that her salary at Humana was $67,000 per year with the hope of additional pay raises or bonuses in the future. While Plaintiff is required to work at least 40 hours a week at Humana, at times she must work up to 55 hours per week to process claims. For the most part, the Plaintiff primarily works from home.

Prior to her employment with Humana, Plaintiff had been on short-term disability and unemployment from January 2018 through August 2018. Prior to that, she worked with Cotiviti, beginning in November 2016 through January 2018 as a "payment accuracy specialist," reviewing and analyzing medical claims for overpayments.

From 2007 through November 2016, the Plaintiff worked at the Rawlings Group in Oldham County, Kentucky. She worked in the Audit Division of Rawlings, starting out as an auditor of medical claims, working in the research and development group, and even acting as a team manager supervising up to ten employees at one time.

Plaintiff has also done freelance paralegal work. Relatedly, she was an Adjunct Professor in the paralegal program at Brown Mackie College.

During the last ten years, the Plaintiff has earned significant income from her employment. Plaintiff produced her wage and income transcripts from the Internal Revenue Service. The IRS transcripts indicate that Plaintiff received wages ranging from $50,032 to $71,861 from 2010 to 2017, with the average yearly income being $62,942. The IRS transcript for 2018 reflected wages

of only $20,311. In 2019, the year after the Plaintiff filed this bankruptcy case, her W-2 from Humana indicated that her total wages and compensation for the year were $60,355.57. Moreover, the Plaintiff's tax returns show that she received tax refunds in the past, including a federal income tax refund of $4,884 for the 2018 tax year.

3.    **Plaintiff's Current Income and Expenses**

Plaintiff currently resides with her grandson, who is approximately 8 years of age. She has had custody of her grandson since he was two years old. They reside in Oldham County Kentucky in a a three bedroom garden home with a garage. Plaintiff's annual salary from Humana was $67,000, and she was paid every two weeks, equating to 26 pay periods a year. According to Plaintiff's paystubs, she was paid approximately $1,933.99 every two weeks from Humana. Plaintiff also receives child support from her daughter in the amount of $312 per month. Based on these figures, Plaintiff's monthly net income is $4,502.31. According to the U.S. Federal Poverty Guidelines, the annual poverty guideline for a two person household in Plaintiff's area is $17,420 for 2021 or $1,451.67 per month. Using these figures, the Plaintiff's net income is more than three (3) times the annual poverty guidelines.

A review of the Plaintiff's monthly expenses reveals several questionable items. For instance, the Plaintiff's alleged expenses in 2020 are more than double her expenses initially reported in the underlying bankruptcy filed in July 2018. In her Schedule I/J, filed with the bankruptcy petition and filed under oath, the Plaintiff indicated that her monthly expenses were only $2,114. In her answers to the Defendants' discovery, however, the Plaintiff now claims that she has monthly expenses totaling over $4,600. The Plaintiff's listed monthly rent in her sworn schedules shows a $930 expense. In her discovery responses, however, this figures is increased to $1,430. No

explanation is provided to explain this substantial increase in housing costs. Plaintiff also included a monthly automobile expense of $250. This expense, however, will end in less than a year when the loan will be paid in full. Finally, on her sworn schedules, the Plaintiff listed no childcare expenses. In her discovery responses, however, she now claims $475 in monthly expenses for childcare. Of this amount, $280 is attributed to "Childcare-- summer (expected)." Obviously, this speculative, and, even if it occurs, it is not a year-round expense.

Plaintiff also testified in her depositions that she was able to save money throughout the year for various items, but these extra savings are not indicated in her September 2020 itemized expenses. For example, the Plaintiff testified that she makes monthly contributions to her 401(k) with Humana in addition to $100 contributions every two weeks to an IRA. Additionally, she testified that she sets aside $250 or more each year for birthday gifts, $500 for her grandson's annual birthday party and then $50 each paycheck or $1300 a year for Christmas gifts and holiday festivities. Over the last few years, Plaintiff also took vacations with her grandson to Disney and then to Florida "four, maybe five times."

**4.    Plaintiff's repayment of her student loans.**

The Plaintiff admitted in her deposition that she has made no payments to her student loan creditors since 2013. Instead, the student loans have generally been in deferment status. Plaintiff had no reasonable explanation for why she had not made any student loan payments since 2013. During this same period of time, the Plaintiff had income during this time of anywhere from $50,000 to $70,000 per year.

Plaintiff has chosen to not utilize the various income driven repayment options offered by student loan creditors, which calculate a borrower's monthly student loan payment based on the

6

borrower's income and household size. Under these plans, Plaintiff could only be required to pay $285 per month based on her current income and household size.

In addition, the Plaintiff is a party to a lawsuit filed in Oldham County against her former employer, The Rawlings Group. She may receive a settlement or damages award in the future that she could use to pay her student loan debt. Plaintiff testified in her January 2020 deposition that a settlement of that case could result in some, if not full, payment of her student loan debt. The Oldham Circuit lawsuit is still pending.

### III.    PROCEDURAL BACKGROUND

#### 1.    Plaintiff's Bankruptcy

Plaintiff filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on July 5, 2018, Case No. 18-32076. Plaintiff filed two prior Chapter 7 bankruptcies. The first, filed in 2008 in this District, Case No. 08-31969, was also a Chapter 7 case, in which the Plaintiff received a discharge on August 19, 2008. The second was filed in 1998 in the U.S. Bankruptcy Court for the Southern District of Indiana, Case No. 98-11904.[1] In her current bankruptcy case, the Plaintiff received a general Chapter 7 Discharge on October 16, 2018.

#### 2.    Adversary Proceeding

In October 2018, the Plaintiff filed this *pro se* adversary proceeding against the Defendants seeking a discharge of her student loans as an undue hardship under the provisions of 11 U.S.C. § 523(a)(8). Having completed discovery, on February 1, 2021, the Defendants filed their Joint Motion for Summary Judgment. On February 3, 2021, the Plaintiff filed her own Motion for

---

[1] The record is unclear whether the Plaintiff received a discharge in this 1998 Indiana bankruptcy case as well.

Summary Judgment. The Plaintiff filed a Response to Defendants' Collective Motion for Summary Judgment on February 25, 2021. The Defendants' filed a Joint Response to Debtor's Motion for Summary Judgment and Reply to Debtor's Response to Defendants' Joint Motion for Summary Judgment on March 29, 2021. The Court took this matter under submission on March 30, 2021.

IV. **STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R. Civ. P. 56(a). If the moving party meets its initial burden, the burden shifts to the non-moving party to establish the existence of a fact requiring trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A fact is "material" only if its resolution will affect the outcome of the proceeding. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.

V. **DISCUSSION**

Generally speaking, student loan debt is non-dischargeable in bankruptcy "unless excepting such debt from discharge ... would impose an undue hardship on the debtor and the debtor's dependents ...." § 523(a)(8). In the Sixth Circuit, in order to meet the "undue hardship" standard in § 523(a)(8),

a debtor must satisfy the Brunner test.[2] To satisfy the Brunner test, a debtor must prove:

> (1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler), 397 F.3d 382, 385 (6th Cir. 2005) (quoting Brunner, 831 F.2d at 396). This test was recognized by the Bankruptcy Appellate Panel of the Sixth Circuit as recently as 2018. See In re Chenault, 586 B.R. 414 (6th Cir. BAP 2018). Section 523(a)(8) imposes a "heightened standard" for the discharge of student loans, one that imposes a "heavy burden" on the debtor. In re Crawley, 460 B.R. 421, 426 (Bankr. E.D. Pa. 2011). The debtor bears the burden of establishing each of these three elements by a preponderance of the evidence. Barrett v Educ. Credit Mgmt. Corp. (In re Barrett), 487 F.3d 353, 358-59 (6th Cir. 2007). All three elements must be satisfied individually before a discharge can be granted. If any one of the Brunner requirements is not satisfied, the bankruptcy court's inquiry must end there, with a finding of no dischargeability. In re Faish, 72 F.3d 298, 306 (3rd Cir. 1995).

---

[2] Plaintiff argues that Brunner has been misinterpreted, citing In re Rosenberg, 610 B.R. 454, 459 (Bankr. S.D.N.Y. 2020). She is not incorrect in that Brunner has been criticized and even abandoned by a number of courts in several different circuits. See, e.g., In re Long, 322 F.3d 549, 554 (8th Cir. 2003) ("We prefer a less restrictive approach to the 'undue hardship' inquiry ... requiring our bankruptcy courts to adhere to the strict parameters of a particular test would diminish the inherent discretion contained in § 523(a)(8)(B) [and therefore we continue] to embrace a totality-of-the-circumstances approach to the 'undue hardship' inquiry."); Bourque v. Educ. Credit Mgmt. Corp. (In re Bourque), 303 B.R. 548, 550 (Bankr. D. Mass.2003). The Court would respond to this argument with two points. First, this lower court is bound to binding authority from the Sixth Circuit. Unless and until the Sixth Circuit Court of Appeals (or the Supreme Court), revisits the issue, bankruptcy courts in this Circuit are obliged to follow Brunner. Second, even under the "totality-of-the circumstances" test, the Plaintiff would still not prevail in this case under these facts.

1.  **Plaintiff Cannot Maintain, Based on Current Income and Expenses, a Minimal Standard of Living if Forced to Repay Her Student Loans**

The first element of the Brunner test "contemplates that a debtor is entitled to maintain a minimal standard of living, which includes basics such as food, clothing, shelter, medical care and transportation for himself and any dependents, before he is required to repay student loan debts." Murrell v. Edsouth (In re Murrell), 605 B.R. 464, 469 (Bankr. N.D. Ohio 2019) (citations omitted). A court must examine the debtor's income and expenses and evaluate what expenses are required to maintain a basic standard of living. Id. at 469 (citation omitted). "After providing for necessary expenses, the court is to determine whether the debtor has income leftover with which to pay his student loan debts." Id. at 469-70 (citation omitted).

In this case, the Plaintiff has earned well above the poverty level from Kentucky, sometimes as as high as $71,861 in one calendar year (2016). According to the Plaintiff's paystubs, her gross income from Humana was over $1,900 every two weeks. As stated above, the IRS transcripts show that the Plaintiff has earned an average yearly income of close to $63,000 from 2010 to 2017. In the year preceding the filing of this bankruptcy case, the Plaintiff's yearly income was over $50,000. Plaintiff's average annualized gross income from 2010 to 2018 of approximately $63,000 is much higher than the median household income in Kentucky for that same period, which is $53,528 for a family of two.[3] Plaintiff's income exceeds the 2018 federal poverty level for a household her size, which is $16,460.[4]

As the Sixth Circuit has explained, debtors "need not live in abject poverty before a discharge is forthcoming." Tenn. Student Assistance Corp., v. Hornsby (In re Hornsby), 144 F.3d

---

[3] https://www.justice.gov/ust/eo/bapcpa/20181101/bci_data/median_income_table.htm

[4] https://aspe.hhs.gov/prior-hhs-poverty-guidelines-and-federal-register-references

433, 438 (6th Cir. 1998) (citing Rice v. U.S. (In re Rice), 78 F.3d 1144, 1151 (6th Cir. 1996)). The Plaintiff in this case is far from abject poverty. Indeed, over the past years, she has had significantly higher income than the median income in Kentucky and the federal poverty level. Indeed, in this Court's experience, the Plaintiff's income is much higher than debtors who normally seek to discharge student loan debt.

With regard to the Plaintiff's expenses, even assuming the unexplained raise in rent from the date of the filing of the bankruptcy petition to the date of her discovery response, the Plaintiff has over the years spent funds on what can only be described as luxury items. Deductions for a 401(k), and IRA, and large amounts spent on birthdays and holidays are just a few examples of these luxury expenses. Moreover, four or five trips to Florida and Disney with her grandchild is hardly reasonable for a person who supposedly cannot maintain a minimal standard of living.

Other expenses are also troubling. Plaintiff's September 2020 budget indicates that she expects after school childcare to be $195 and summer childcare to be $280 per month. Logically, these two expenses cannot be concurrent. During the school year, one would expect an afterschool expense. Likewise, during the summer months one would expect a summer childcare expense. They would not, however, both be applicable every month of the year. In other words, Plaintiff would not need afterschool and summer childcare at the same time.

In Sexton v. PHEAA (In re Sexton), 520 B.R. 578, 583 (Bankr. W.D. Ky. 2014) (citing Nixon v. Key Educ. Res. (In re Nixon), 453 B.R. 311, 326 (Bankr. S.D. Ohio 2011)), the court explained that "[any] frivolity or unnecessary expenses stand out as indicia that a debtor has alternatives means of improving his or her financial situation without requiring the court to absolve their student loan debt." Sexton, 520 B.R. at 584. In the facts of this case, there is an abundance of

frivolity and unnecessary expenses that preclude this Court from finding that the Plaintiff cannot maintain a minimal standard of living if she is forced to repay her student loans.

Here, since filing the underlying bankruptcy in 2018, Plaintiff's alleged expenses demonstrate that she has not made an attempt to minimize her expenses; rather, her budget includes a number of discretionary expenses. Moreover, for unexplained reasons her expenses have increased significantly since the filing of the Chapter 7 bankruptcy in July 2018. If the Plaintiff would make any effort to minimize her expenses, funds, and perhaps significant funds, would be available to pay her student loan debt and still maintain her current, well-above poverty level, standard of living.

Even when viewing the evidence in favor of the Plaintiff, it is abundantly evident that the Plaintiff can afford to maintain a minimal standard of living and repay her student loans. As such, the Plaintiff fails to meet the first element of the Brunner test. The Court could stop here, but will instead also analyze the other two elements of the Brunner test as applied to these facts.

2.  **Additional Circumstances Exist Indicating that Plaintiff's State of Affairs is Likely to Persist for a Significant Portion of the Repayment Period of the Student Loans**

Turning to the second element, the Sixth Circuit has held that:

> Such circumstances must be indicative of a certainty of hopelessness, not merely a present inability to fulfill financial commitment. They may include illness, disability, a lack of usable job skills, or the existence of a large number of dependents. And, most importantly, they must be beyond the debtor's control, not borne of free choice. Choosing a low-paying job cannot merit undue hardship relief.

Oyler, 397 F.3d at 386 (citations and quotation marks omitted). The debtor must also "precisely identify her problems and explain how her condition would impair her ability to work in the future." Tirch v. Penn. Higher Educ. Assistance Agency (In re Tirch), 409 F.3d 677, 681 (6th Cir. 2005)

(citations omitted).

Plaintiff cannot meet this element of Brunner either.  As stated above, the Plaintiff lives well above a minimal standard of living.  She has earned significant yearly income over the last 7-8 years.  She has been able to spend inordinate amounts on birthdays and holiday gifts, as well as take numerous trips.  There are no circumstances which prohibit the Plaintiff from making at least some level of payment on her student loans.  Moreover, if the Plaintiff minimized some of her expenses as required by Brunner, then she could make payments to her student loan creditors under the income driven programs offered by the Defendants at her current income.

The Court cannot find a "certainty of hopelessness" on the part of the Plaintiff.  Indeed, her own deposition indicates her circumstances are not likely to persist, which is a prerequisite to satisfy the second Brunner factor. When asked during her January 2020 deposition whether her financial situation should improve in the future, Plaintiff agreed that "[i]t should."  Further, as Plaintiff's grandson grows older, a number of her expenses will be changed.  While her food budget may increase, her childcare expenses will be eliminated.  Taken all together, the Court cannot find a certainty of hopelessness in either her current circumstances or her future prospects to satisfy the second factor required by Brunner.

3.     **Plaintiff Has Made Good Faith Efforts to Repay Her Student Loans**

In this context, good faith "'is essentially an inquiry into whether the debtor has consciously or irresponsibly disregarded his or her repayment obligation—or, instead, whether there is some justification for the debtor's default and ongoing inability to repay the loan.'" Trudel v. U.S. Dep't of Educ. (In re Trudel), 514 B.R. 219, 228-29 (B.A.P. 6th Cir. 2014) (quoting Crawley v. Educ. Credit Mgmt. Corp. (In re Crawley), 460 B.R. 421, 444 (Bankr. E.D. Pa. 2011)). "Courts consider

a number of factors to determine good faith, including the debtor's repayment history and her efforts to obtain employment, maximize income, minimize expenses, and participate in alternative repayment programs, though no single factor is dispositive." Trudel, 514 B.R. at 229 (citations omitted). "Inherent in any good-faith analysis under the third prong of the Brunner test is whether and the extent to which the debtor actually made any voluntary payments on the obligation." Trudel, 514 B.R. at 229 (citations, quotation marks, and alteration omitted).

      In the instant case, the Plaintiff cannot carry her burden under this element of Brunner either. Plaintiff is unable to demonstrate a good faith effort to repay her student loans. Although the Plaintiff has maintained consistent employment with net income of more than 3 times the poverty level, she has failed to make even nominal student loan payments for over seven years. Plaintiff admitted she has failed to make any student loan payments since 2013, even in tax year 2016, when her income reached over $71,800. "A debtor may only receive an 'undue hardship' discharge of their student loan if they show that they have made a good faith effort to repay the obligation." Roberts v. U.S. Department of Education (In re Roberts), 442 B.R. 116, 119 (Bankr. N.D. Ohio 2010). The Plaintiff's loans date back to 2006, yet the Plaintiff has only made nominal payments on her debt, and these payments stopped in 2013. Plaintiff offers no sufficient explanation for her utter failure to make even nominal payments on this debt during the past 7 years while earning significant income.

      Additionally, while Plaintiff was able to set aside funds for birthdays and holiday gifts, as well as take 4-5 trips to Florida and Disney, she has not made any effort to set aside or save funds for her student loan debt. In her deposition, Plaintiff admitted that she had not set up a savings plan for her student loans even though she had savings plans for other items like gifts, cosmetic surgery,

and trips. Failing to make even nominal payments when income levels clearly support the ability to make payments are clear flags of bad faith.

It also appears that Plaintiff has made no attempts to participate in an alternative repayment program. Bad faith can be inferred from the Plaintiff's failure to pursue repayment through the income driven repayment options offered by the Defendants. According to Gin Say Chan, a Loan Analyst in the United States Department of Education, there are a number of repayment options based on a debtor's income and household size, which are usually "more affordable than standard repayment plans . . . ." See Chan Declaration, ¶ 16. For example, Plaintiff can consolidate all the loans held by the defendants in this case and a repayment option, which would set a monthly payment based on 10% of a borrower's discretionary income. Id. at ¶ 18. Plaintiff is also eligible for the Income Based Repayment Plan ("IBR Plan") and the Income Contingent Repayment Plan ("ICR Plan"). Id. at ¶¶ 33-34.

While a debtor's failure to participate in these programs is "not a per se indication of a lack of good faith," a debtor's refusal to even apply for the programs "is probative" for Brunner's good faith requirement. In re Tirch, 409 F.3d 677, 683 (6th Cir. 2005). Not even applying to these programs to determine what level of loan repayment is possible, is a clear sign of a lack of good faith on the Plaintiff's part. Fields v. Sallie Mae Services Corp. (In re Fields), 286 F. App'x 246, 250 (6th Cir. 2007).

The Plaintiff, under these facts, simply cannot show a good faith effort to repay her loans. Plaintiff acquired an Associate's Degree from Shawnee State in Small Business Administration, and a Bachelor's Degree from Sullivan University in Pre-Law. She has job skills, plus training that she has used to obtain employment wherein she earned income significantly higher than the median

15

income level and the federal poverty level. Despite these facts, the Plaintiff has made no student loan payments since 2013. See Flores v. U.S. Dep't of Educ. (In re Flores), 282 B.R. 847, 856 (Bankr. N.D. Ohio 2002) (finding lack of good faith for debtor who made no payments and who obtained "very real and tangible benefit from her student loan obligation" given that her education helped her obtain her present job); Marlow v. U.S. Dep't of Educ. (In re Marlow), 2012 WL 4829424, at 17-18 (Bankr. E.D. Tenn. 2012) (finding lack of good faith for debtor who was not maximizing his income and who obtained tangible benefit from student loans in the form of multiple degrees). Taking all these factors together, the multiple degrees leading to good employment, the total lack of any effort to make even nominal payments, and the failure to apply for income-based repayment options, the Court is left with a conviction that the Plaintiff has not made a good faith effort to repay her student loans. As such, the Plaintiff has not met the third element of the Brunner test.

In the Plaintiff's Motion and Response, she makes reference to spousal abuse, a child custody fight, a paternal kidnapping situation, and the failure of her ex-spouse to pay child support. She admits, however, that her last hearing on issues with her ex-spouse were in the early months of 2002. The reference to child support obligations ran through 2009. The Court's analysis above, is based on the facts in the much closer past, from 2010 forward. While the facts described by the Plaintiff in 2001-2002 were traumatic, they bear no relevance to the Plaintiff's current financial situation or in the years immediately preceding the filing of this bankruptcy case.

Plaintiff also makes reference to the Covid-19 pandemic. Yet she then admits that this pandemic began in the year 2020, well after the filing of this bankruptcy case and this adversary proceeding. She does not indicate that she has been adversely affected by Covid-19. Moreover, her

references that the federal government may forgive all or part of some student loan debt due to the pandemic is equally irrelevant. What the federal government may or may not do in the future, has no relevance to this Court's application of the Brunner test to the facts presented.

Finally, the Plaintiff argues that she suffers from multiple medical conditions, including, but not limited to, stroke syndrome, short term memory loss, migraines, neurological vision disturbances, psoriasis, arthritis, post traumatic stress disorder (PTSD), anxiety, depression, and many more. What the Plaintiff fails to demonstrate however, is how any of these medical conditions have affected her income and expenses. As stated above, the Plaintiff has earned significant income over the past few years, despite these conditions. These conditions did not cause her to spend elaborate amounts on birthdays and holiday gifts. They did not cause her to take multiple trips to Florida with her grandson. The Court sympathizes with the Plaintiff and her fight with these medical problems, but it must still adhere to controlling law, which when applied to the facts in this case, precludes discharging these student loan debts.

## VI. CONCLUSION

Under the Brunner test which controls the application of 11 U.S.C. § 523(a)(8) in the Sixth Circuit, the Plaintiff has not carried her burden to show that the repayment of these student loan debts constitute an undue hardship. While Brunner has received some criticism, some deservedly, it remains good law in the Sixth Circuit. Under the test set forth in Brunner, the Plaintiff fails to satisfy any of the elements necessary for the Court to find these debts constitute an undue hardship and should be discharged in this Chapter 7 bankruptcy case. Therefore, the Defendant's Joint Motion for Summary Judgment will be granted and the Plaintiff's Motion for Summary Judgment will be denied by separate order.

_Alan C. Stout_
Alan C. Stout
United States Bankruptcy Judge
Dated: April 23, 2021

17

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN RE: ) | |
| ONA COLETTE ANNE HULL ) | Case No. 18-32076 |
| Debtor. ) | Chapter 7 |
| ) | |
| ONA COLETTE ANNE HULL ) | A.P. No. 18-3046 |
| Plaintiff. ) | |
| vs. ) | |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| EDUCATION, ET AL. ) | |
| Defendants. ) | |

**ORDER**

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference,

**IT IS HEREBY ORDERED** that the Joint Motion for Summary Judgment filed by the Defendants, the United States of America, on behalf of its agency the Department of Education, Education Credit Management Corporation, and the Kentucky Higher Education Assistance Authority is **GRANTED**. Plaintiff has not met her burden under § 523(a)(8). Summary judgment is granted in Defendants' favor on Plaintiff's claim.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment is **DENIED**.

This is a final and appealable judgment. There is no just cause for delay.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: April 23, 2021